IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENISSE LÓPEZ-CORREA [2],

Defendant.

CRIMINAL NO. 09-233 (GAG)

**OPINION AND ORDER**

Presently before the Court is supervisee Jenisse López-Correa's motion to reduce her sentence of thirty years of supervised release. (Docket No. 183.) After considering the motion, the Government's response, and all memoranda, testimony, and exhibits submitted by the parties, the Court will **GRANT** the motion to reduce or terminate the period of supervised release. (Docket Nos. 183, 185, 205, 215, 219.)

On January 22, 2010, Ms. López-Correa pleaded guilty to violations of 18 U.S.C. §§ 2251 for aiding and abetting in the production of child pornography involving a fourteen-year-old female. (Docket No. 128 at 1, 5-6.) The Court sentenced her to time served, followed by 30 years of supervised release.[1] (Docket Nos. 131, 132.) Her co-defendant, Joseph Acevedo-Maldonado, was convicted after a jury trial and sentenced by this Court to 300 months imprisonment to be followed by 20 years of supervised release. (Docket No. 147.) Since her sentencing, Ms. López-Correa has been receiving sex offender treatment from a psychologist and has fully complied with

---

[1] Ms. López-Correa was briefly in custody following her arrest until she was released on bail conditions. See 18 U.S.C. §§ 3141(a), 3142(c), (f)(1)(A). Although she faced a statutory minimum of 15 years imprisonment, upon motion by the Government, the Court was able to sentence her below said congressional directive. See 18 U.S.C. § 3553(c).

**Criminal No. 09-233 (GAG)**

all of the terms and conditions of her supervised release. (Docket No. 215 at 3.) As of October 13, 2015, she successfully completed the minimum term of 5 years of supervised release required by statute. (Docket No. 210 at 27-28.)

The Court takes this opportunity to review Ms. López-Correa's sentence in light of new, post-sentence information from her treatment providers regarding a remarkable history of abuse and the profoundly coercive effect of her relationship with the violent and controlling co-defendant. Considering that Ms. López-Correa's role in the charged offenses resulted from extreme fear and duress, the Court is disinclined to prolong the emotional shame and legal albatross of the conditions of her supervision.

Pursuant to 18 U.S.C. § 3583(e), the Court may modify, revoke or terminate the term or conditions of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The Court considers the factors articulated in § 3553, including the nature and circumstances of the offense, the history and characteristics of the defendant, and the future risk of harm the defendant poses to the public. Id. § 3553(a)(1), (a)(2)(c).

In this case, the Court agrees with Ms. López-Correa that early termination of the supervised release period is appropriate. In addition to the history of physical and sexual abuse throughout her relationship with Joseph Acevedo-Maldonado, the experts who evaluated her agree that Ms. López-Correa's behavior during the relevant period is most consistent with that of a victim of abuse than a sexual predator. (Docket No. 210 at 21-23.) Acevedo-Maldonado exercised near total control over her from the beginning of their relationship throughout the period during which the offenses occurred, beating her, raping her and threatening her with physical and

emotional violence.[2] She received medical treatment after he forcefully sodomized her, and was hospitalized for a period after attempting to commit suicide. (Docket No. 124 ¶¶ 36, 39.) Commonwealth's Women's Advocate Wanda Vázquez-Garced concluded that López-Correa's behavior was influenced by this process of victimization:[3]

> Jenisse López-Correa and her behavior were highly influenced by a cruel, constant, and intentional pattern of abuse by way of domestic violence and sexual aggression which placed her in a position of defenselessness and inability to control her will. This situation prevented [her] from being able to make decisions in relation t[o] the abuse or for terminating the relationship. She demonstrated low self-esteem, a feeling of impotence, fear of making decisions, terror [of] abandoning the relation[ship] because of the imminence of a violent reaction from Acevedo-Maldonado."

(Docket No. 204-2 at 10.) Ms. López-Correa was effectively a prisoner of Acevedo-Maldonado, which informs the Court's opinion of her history and characteristics.

The Court also considers Ms. López-Correa's role in the offense, and notes that she was forced by Acevedo-Maldonado to participate. She never indicated independent motivation to engage in these acts. (Docket No. 210 at 23-24.) Rather, all of the information contained in the Pre-Sentence Report, expert reports, and expert testimony indicate that she was severely and negatively impacted by her involvement, which was the product of coercion and duress rather

---

[2] López-Correa stated: "he hit me so much that I thought he would kill me, he would rape me, would asphyxiate me, would threaten me with a pistol, I felt I had no way out . . . I couldn't challenge him, a lot of people knew him, I thought that wherever I was he would find me . . ." (Docket No. 204-2 at 8.)

[3] Attorney Wanda Vázquez-Garced was appointed to her position by the Governor of Puerto Rico, following Senate confirmation in 2010. Prior to that she was a prosecutor with over two decades of experience at the Commonwealth Justice Department, where she became learned in investigating and trying cases of domestic violence and abuse. During her tenure at the Justice Department, she handled matters which resulted in leading Puerto Rico Supreme Court jurisprudence on domestic violence, and also spearheaded the creation of specialized domestic violence units in the jurisdiction's thirteen judicial districts, among other notable accomplishments such as extensively lecturing and training prosecutors and police officers on the subject. Based on her experience and qualifications, the Court named her an expert in this case, which allowed her to review all evidence of record and issue an opinion as to the ultimate issue of whether Ms. López-Correa herself was a victim. See Fed. R. Evid. 702, 703. (Docket Nos. 199 at 21-24; 210 at 3-4, 11-16.)

**Criminal No. 09-233 (GAG)**

than her own free will or personal desire. Nonetheless, she accepted responsibility for her role, pleaded guilty, and cooperated fully with authorities.

The likelihood of recidivism is extremely low in this case, and the Court finds that Ms. López-Correa poses no future risk of harm to the public. She has no prior criminal record and has received psychiatric and psychological treatment in furtherance of rehabilitation since her arrest. (Docket No. 215 at 3.) Her commitment to rehabilitation is clearly evident from her compliance with every condition set by her probation officer and her treatment providers. (Docket No. 210 at 31-32.) More so, Ms. López-Correa has been proactive in her recovery, contacting Dr. Berrios-Méndez and her probation officer herself in order to seek help or advice during her rehabilitation.[4] Id. at 27-28. Additionally, she expressed remorse for involvement on the day of her arrest and pleaded guilty to the charges against her. She also told authorities that she was glad the juvenile pornography scheme was discovered because she was finally able to access tools for her rehabilitation. (Docket No. 210 at 24.) Because her treatment providers concluded that Ms. López-Correa is more properly characterized as a victim than a sexual offender, there is no reason to believe that she will commit similar crimes in the future. Her profile is not consistent with that of a sexual predator, and the history of her own abuse explains her complicity in this offense. (Docket No. 204-2 at 10.) Rather than presenting with the indicators of sexual predation, she has only ever manifested symptoms of physical and emotional abuse, depression and fear of Acevedo-Maldonado, all of which have been improving with treatment over the last five years. (Docket No. 210 at 23-24.)

---

[4] Dr. Berrios-Méndez testified that she has "received phone calls at one o'clock in the morning from Jennisse because she's thinking about killing herself; and I have answered, as [has] her probation officer. We have done that several times." (Docket No. 210 at 33.)

4

Criminal No. 09-233 (GAG)

**<u>The Court takes note the special circumstances of this case.  Originally, the Court viewed Ms. López-Correa as a criminal, as an aider and abetter in the production of child pornography videos with Joseph Acevedo.  Today, with new post-sentence evidence, the Court now sees that she is not a criminal, but rather a victim herself.</u>**

Like the character of Hester Prynne in Nathaniel Hawthorne's <u>The Scarlet Letter</u>, she is now branded for life as a sex offender as a result of her conviction, even though she will no longer remain under supervised release.  Everywhere she travels, everywhere she works and goes, she must register and notify the proper authorities, or she faces serious criminal charges.  Like Hester Prynne, carrying the letter A on her chest, Ms. López-Correa carries the letters SO on hers.  As Hawthorne explains, this kind of symbol defines the person who must bear it: *"It seemed to argue so wide a diffusion of her shame that all nature knew of it; it could have caused her no deeper pang had the leaves of the trees whispered the dark story among themselves, had the summer breeze murmured about it, had the wintry blast shrieked it aloud!"*[5]  Similarly, the burden of sex offender status will follow her in perpetuity.

The Court now has the report authored on March 2, 2015 by Wanda Vázquez-Garced from the Office of the Ombudsperson for Women, and more recently, the testimony of Dr. Vanessa Berrios-Méndez, which inform the Court's analysis of Ms. López-Correa's role in the offense.  The Report unequivocally concludes that Ms. López-Correa's behavior was more consistent with that of a battered woman than a sexual predator.  (Docket No. 204-2 at 10.) Similarly, Dr. Berrios-Méndez's testimony revealed that in five years of treatment, Ms. López-Correa made tremendous progress coping with the issues stemming from the sexual and physical

---

[5] Nathaniel Hawthorne, <u>The Scarlet Letter</u>, Chapter V (1850).

5

abuse she endured as a child and as an adult.[6]  (Docket No. 210 at 21-23.)  Specifically, Dr. Berrios-Méndez concluded that Ms. López-Correa is "not the typical case of a sexual offender where there's an intention or a desire to abuse a minor." Id. at 23.  Rather, Ms. López-Correa was motivated by fear of disobeying Acevedo. Id.

If the Court had access to these evaluations at the time of sentencing, the Court would have vacated her guilty plea.  The court would not have accepted her plea because, as a victim, a sex slave of Acevedo, she did not have the *mens rea* to commit the offense.  Therefore, in the Court's opinion, she is actually innocent.  Similarly, the Court believes that if the Government had all this information at the time of her arrest, it would have seen this case through a different lens.[7]  But regrettably, we operate under a criminal system which, because of extremely high mandatory minimum sentences, leaves a criminal defendant such as Ms. López-Correa very little choice.  Either risk going to prison for 15 years for production of child pornography, or plead guilty and cooperate, hoping to receive a sentence of no jail time.  Additionally, because of the way our federal system works, it is very difficult to identify a victim like Ms. López-Correa during the process, especially because of her unique involvement.  This is something the undersigned had never witnessed in one of the many such cases over which he has presided during his fifteen years as a federal judicial officer, the last ten as a district judge.

Further, the Court acknowledges that with the stigma of a sexual offender and the requirements of her supervision, Ms. López-Correa's full recovery is limited.  Specifically, as a

---

[6] The abuse began as a child when a relative sexually abused her at the age of 10.  (Docket No. 128 at 4.) She became pregnant when she was 16 and separated from the father after only three months of marriage.  Id. During her treatment over the last five years, she revealed that this pregnancy was the result of another rape. (Docket No. 210 at 22.)  She was also raped by Acevedo on their first date, and regularly victimized by him for the duration of their relationship.  (Docket No. 124 at 12.)

[7] The Court is not suggesting that the Government acted improperly when this case was prosecuted.  To the contrary, the prosecutors and case agents acted upon the evidence available to them at the time.

6

**Criminal No. 09-233 (GAG)**

sex offender she has had difficulty finding employment, despite her best efforts and those of her probation officer and treatment providers. Id. at 25-26.  In light of all of the information we now have about Ms. López-Correa, including her background, role in the offense, likelihood of recividism, and commitment to rehabilitation, it is no longer appropriate to maintain her term of supervised release.

Court-appointed counsel shall remain as such to evaluate whether a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is warranted, and, if so, file the same.[8]  The Court highly encourages the Government to consider joining such a motion and moving to vacate the conviction.

Though the Court intends to terminate Ms. López-Correa's supervised release, the Court will not alter judgment or enter any order to that effect at this point.  In light of concerns that any petition for habeas corpus she intends to file would be considered moot if the Court were to terminate her supervised release today, the parties are to inform the Court how they intend to proceed.[9]  The Court, accordingly, will hold a status conference on **Tuesday, March 15, 2016 at 9:00 A.M. in Old San Juan Courtroom 6**.  If Ms. López-Correa decides to forego her right to seek habeas relief, the court will terminate her supervision on that date.  However, if Ms. López-Correa decides to file a habeas petition, with or without the support of the Government, the Court will reduce the period of her supervision to the extent necessary in order to enable her to do so.

---

[8] Tinder v. Paula, 725 F.2d 801, 803-04 (1st Cir. 1984).  Though a petition for habeas corpus is only available to a "person in custody," the First Circuit has clearly held that the custody requirement encompasses petitioners on probation and parole, and those subject to "restraints not shared by the public generally" Id. (citing Jones v. Cunningham, 317 U.S. 236, 240 (1963)).  Because Ms. López-Correa's sentence of supervised release renders her currently "under governmental supervision," the Court notes that she remains technically eligible for habeas relief under the statute despite not being a prisoner custodied in the Federal Bureau of Prisons.

[9] The Court is cognizant that after the term of imprisonment or supervision expires, "the [government] no longer has special supervisory authority over the person. Thus, a sentence that has been fully served does not satisfy the custody requirement of the habeas statute, despite the collateral consequences that generally attend a criminal conviction." Tinder v. Paula, 725 F.2d at 803.  Therefore, in order to preserve Ms. López-Correa's opportunity to seek collateral review of her conviction, the Court will delay entering judgment terminating her supervised release.

**Criminal No. 09-233 (GAG)**

**SO ORDERED.**

In San Juan, Puerto Rico this 10th day of February, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge